this particular panel. I know we have seasoned attorneys here, so I'll be brief on the rules. Please recall that when the yellow light comes on, you have two minutes. The red light comes on. You need to wrap it up. Now, if we're still asking you questions, you don't get to run out the door, okay? But you need to wrap up your argument. Please recall that rebuttal is for rebuttal only, and we always appreciate citations to the record when you're call case number 18-60581, Lefoldt v. Horn. Good morning. May it please the Court, my name is Brent Baird. I'm joined this morning with my colleague Allison Mills. I represent Ken Lefoldt in his capacity as the liquidating trustee of the Natchez Regional Medical Center Liquidation Trust. I'll simply refer to that as NRMC. We appear today asking the Court to reverse the district court's conclusion that in the absence of an enforceable contract as a result of Mississippi's minutes rule, there can be no professional relationship for purposes of a malpractice action against the former accountants of NRMC. There is no dispute that Horn performed multiple audits. There's no dispute that it was paid handsomely for that. And, of course, now there can be no dispute that the contracts, the three engagement letters, were not adequately placed upon the minutes of NRMC, such as to be enforceable contracts. Apparently, based upon that, the district court held there could be no professional relationship for purposes of a malpractice action. It's not entirely clear to us whether the district court meant by that that there must be an enforceable written contract in order for a professional relationship to exist, or whether the court meant that in the absence of writing on the minutes, there could be no showing of a consent to a professional relationship by the public body. With regard to the former, Mississippi law is now long settled that a written contract is not necessary for the formation of a professional relationship. With regard to the latter, if, indeed, the court meant to say that absent a showing on the minutes of an intention to form a professional relationship, there could be no professional relationship. I'm sorry. Which ruling are you talking about? The ruling of this Court when the case was No, sir. I'm talking about the district court's case after remand. District court rule. As the Court is aware, this Court concluded that the engagement letters were not adequately placed on the minutes, affirmed the district court in that regard. It was remanded. Horne then moved for summary judgment on the theory that in the absence of the engagement letters, it was not possible to show what duties they were under. The district court really went beyond the scope of what they moved for and held No, we don't even have to get to that issue because in the absence of an enforceable contract as a result of this rule, there could be no professional relationship as a matter of law. That is an unprecedented expansion of the application of the minutes rule. Indeed. I see a little bit more refined problem here, which is your position is I can say, hey, I need your help on something. You go, I'll be your lawyer, and we've got a deal. We've got a professional relationship. We're good to go. The problem is here there were limitations on what that relationship was that were contained in these letters. So if these letters are not enforceable because of the threat on the minutes, then the Horne is put in the position of having responsibility without authority, if you will. They are responsible for whatever you feel like they're responsible for and any limitations they put on that. So let's give an attorney example. If I agreed to represent you in one case and then an answer wasn't filed in some other case, you can't sue me saying you didn't file an answer in the second case and a default was taken. I say, well, we were limited to case number one, not case number two. Well, how do I prove that? The letter where I said I'm only going to represent you in case number one, but you're saying not spread on the minutes, can't put that letter in. How do we resolve this problem of professional relationships, whatever that is, can have limitations on them? Of course. And I think the reality is we look to what Horne actually did, the audits that it produced. Remember at the core of this case are not our allegations of systemic failure. Failure to be cognizant of and advise the officers and directors of lacking systems at NRMC. By way of illustration, this hospital is highly or rather was highly dependent upon Medicare and Medicaid funding. Commencing in 2010 with the implementation of the RAC audit arrangement, who I think is generally familiar with, the RAC audits which have now been terminated, they were by private parties and there was a 60-day period in which to respond to the RAC audits, failing which that claim was lost with a massive impact on the revenue here. This hospital did not have a system in place to respond to its RAC audits. Let's stipulate that obviously a lot of accounting work was done here. I do recall that it was you all that brought up, maybe not you personally, but your client asserted the minutes rule for the purpose of striking the arbitration clause. Well, no. Actually, we filed suit on our tort claims as opposed to our contract claims, let me emphasize, and Mississippi recognizes both. Horne's response was you would have to go to arbitration because we have an enforceable engagement claim. Now, you know, looking to what the Supreme Court did in Singing River, Mississippi Supreme Court, which is really a mirror lawsuit, right, the Supreme Court informed us there, no, it was their KPMG or here Horne's responsibility to put this on the minutes, failing which it cannot enforce the contract. It wasn't invalidated. But to get to my point, there was a, what the other side would argue, I'm sure, vociferously, there was an awfully formalistic approach when it came to arbitration. There was an arbitration clause in the agreement, but it didn't satisfy the formal requirements of the minutes rule. Why does that principle not apply here? I'm sorry, I didn't hear your last question. Let me cut to the chase. Let me grant your point that it seems awfully formalistic to apply the minutes rule when all the conduct shows that there was lots of accounting work going on here. Nevertheless, isn't the Mississippi court pretty formalistic when it comes to the minutes rule? Well, it is indeed with respect to finding an enforceable contract. It has not been, however, with respect to permitting the public body to pursue claims against the party who did not meet its requirement of putting the contract on the minutes. In other words, it's an issue of first impression for Mississippi. Well, no, actually it isn't. In Wellness, the Supreme Court held that the contract there, as the court may recall the facts, a public body contracted with Wellness to expand upon and renovate its hospital. A suit was then filed for breach of contract and other tort theories against the contractor. The contractor moved to stay and to refer to arbitration consistent with its contract. That case went to the Supreme Court. It held that the contract was not adequately spread upon the minutes and remanded for further proceedings of the public body as a plaintiff. The court could take judicial notice that that case has then been litigated actively with the public body as the plaintiff in district court and was recently resolved. In the current duo of cases involving Singing River, which, as I said, I believe to be a mirror illustration of what we're discussing here today, the Supreme Court has held that the contract between Singing River Medical Center in Jackson and KPMG was not adequately spread upon the minutes and has likewise remanded for further proceedings. I certainly acknowledge, as suggested by Horne, that it did not address the issue per se of whether there has been an evisceration of the professional relationship. But it's difficult to imagine that if the Mississippi Supreme Court was of the view that there could never be any claim because there was no professional relationship in the district court here, it would have not sent this matter back for further proceedings. But if nobody raised that point, they would have sent it back. So I don't know that I can draw that conclusion. Typically, particularly appellate courts don't run around reaching a bunch of issues nobody raised and say, hey, by the way, when you're back there. I mean, somebody has to raise the issue. And so here they have. And there isn't a case squarely on point that says, having said these contracts weren't spread on the minute, these letters, spread on the minutes, and then raising the point that Horne has raised, which is a very specific point. It's not saying we could never have any kind of whatever professional relationship, but they're saying the claims you're making about we were supposed to notice X, Y, and Z were limited, our audit was limited by these letters. So you can't judge us on some generic common law theory when we were proceeding under this approach. Having invalidated these letters, you can't kind of, you know, have your cake and eat it, too, so to speak. Well, invalidation is, I think, important to note is not what occurred here. A contract was not formed. An enforceable contract was not formed. We did not invalidate and then seek to take advantage of that contract. I think that's semantic. It may not be semantics in every case, but it's semantics here. Because the point is, like I said, when you as a lawyer sign up with a client, I feel sure you're not saying you're going to do every single legal thing they need for the rest of their lives or whatever. You are signing up for case number one or you're signing up for deal number two. And you would be very shocked to find out now all of a sudden you're responsible for deal number one that you weren't a part of. Well, that's probably true, but I suspect I would be less shocked if I had an oral agreement with the party to represent him in a matter. There was no definition. I'm going to represent you, which is effectively where we end up here, because there was no enforceable agreement to begin with. That's where we end up. And there are a series of pleadings I filed which are the subject of the debate as to whether I met the standard of care. I mean, we had an engagement like this much at the last argument where Horne said in effect, if you take away this agreement, if we admittedly, it's our responsibility, Horne, no one disputes, it's their obligation to put it on the minutes. That was most recently reaffirmed by the Mississippi Supreme Court. We didn't do that, but we're entitled to the protections we would have had had we done our job to put it on the minutes. My response to that was, let us go forth with the typical approach to a malpractice case, whether accountant or law, where there are standards of care applicable to an audit for a medical facility. Horne is indeed the largest auditor of public hospitals in the state of Mississippi. I suspect the focus here will be did they follow their protocols that they normally use. Now, I may not ultimately— Are you appealing the denial of your motion for reconsideration? Your Honor, we are, but I have to say I think the motion for reconsideration at this point is really of no moment. The reconsideration— So the minutes from the executive session that you offered in support of your motion for reconsideration don't matter to you? I don't know that they do. The reason those were offered was to show that while there was no detail as required of the obligation of the contract, there plainly was a professional relationship. There were, as in the Singing River case, I think they referred to it as scant references to the work. And that's why we put those so there's no doubt there was a professional relationship. But Horne acknowledges that. There's no dispute here that they did the audits. There's no dispute they were paid for the audits. So the question now really before the Court is never has a Mississippi court, lower or Supreme Court, held that the minutes rule effectively acts punitively towards the public body to eviscerate its rights to sue the parties with whom it contracted. And that's the net result here. Indeed, we know under Mississippi law that a non-client could file suit against these accounts. Tushar Ross teaches that there's an adequate professional relationship if I'm among the class of persons who can reasonably be expected to receive and rely upon the audit though I had no direct relationship whatsoever. So your argument is the minutes rule applies except against the public body that's required for reasons of transparency and openness in government to spread its rulings, its contracts upon its minutes. It doesn't apply to them. It should never be applied against them. I think it applies to bar our contract claims. We are suing here in tort, and I think that's how you reconcile it. Had I, for example, filed suit against you. So it would bar a contract claim but not a tort claim? Exactly. If there was no contract claim. The problem here is the link between the tort and the contract. This isn't like Horne was driving, you know, a member of Horne was driving a truck and ran into the hospital building. That would be a pure tort. No prior relationship, nothing. I can't just say I'm limiting my liability for driving trucks into your building. You can sue. We're done. But here there's a connection that you keep wanting to avoid, which is there was a framework for this relationship that everyone agreed to but didn't spread on the minutes. So, okay, Horne got the bad end of that by not getting to arbitrate, but you're saying we can kind of pick and choose. This kind of goes back to the question I asked back in the insurance policy. I mean, do you get to decide there's no caps on the insurance policy, there's no exceptions to coverage and whatever just because that's not spread on the minutes and yet you still want the benefit of the policy? I just don't think it can work that way. Well, I submit at the end of the day my obligation, regardless of this, is to show whether or not they met the standard of care, whether they met the standard of care. Assume with me for a moment that we had a slightly different case. We all know, for example, that auditors do not guarantee the accuracy of each account receivable. They take a sample. Assume with me for a moment, though, that I had a contract that said Horne, in contrast, was going to check every single account receivable to tell it's accurate. I will grant you that under the minutes rule, since it was not spread across, I can't sue them for that default. I do believe, however, I can sue them for the defaults which are consistent to any audit of a public facility. Let us assume this is a question of first impression. What would your client's view be of certifying this to the Mississippi Supreme Court? Your Honor, if indeed the court's view is that the logical extension of the minutes rule is to take away any claim by the public body, then I believe it needs to be certified to the Mississippi Supreme Court. Singing River is before them today. And candidly, while this is an important case involving significant resources, it is dwarfed by that case. And as I heard yesterday, the Visine argument, ultimately this is an issue of State law. There, Louisiana, in Article 2004, this is purely a creation of the State of Mississippi involving public bodies, and I submit, uniquely suited to disposition. Thank you. Okay. You have reserved time for rebuttal. Thank you, sir. Please, the Court. My name is Alan Perry. Let me change the way I think this case is presented by Mr. Barrier. This was not decided on the basis that there was an absence of an enforceable contract. Judge Sterrett got it right. He said mutual assent is what is required, and there wasn't any mutual assent. What about the argument that there was clearly mutual assent to do an audit? Y'all did an audit. You got paid. Somebody agreed to do something. Why isn't that enough to say there's a minimum for that something that y'all didn't meet? If there were mutual assent were permitted by implication, if this were not a public body, of course, you could prove this. I didn't make this very formalistic rule. We didn't particularly want it, but we've got it. And they have to assent on the minutes. That's what Judge Sterrett said, and that's correct. Well, it's kind of like a statute of frauds. It's very much like that. At the end of the day, there's going to be unfairness, but if the law requires formality, the law requires formality. And the formality does work both ways here. Well, he's arguing it doesn't. Yeah. What do you say to that? What case tells us that, you know, you can't ever take an E-2 or whatever? Well, there isn't any case that says that you can say the contract's invalid and then take the benefits of it. And he is taking the benefits of it. As Judge Sterrett said, if you sue in tort or in contract, the duties of the professional arise out of the mutual assent. You can't say, oh, there is no mutual assent, but you still did the work, so you're a professional and you have these free-floating duties. The law in Mississippi and in most places limits the duty of care of a professional to the work he agreed to do. And in this case, that required mutual assent. Is there a sort of common law term audit that encompasses A, B, C, so if you didn't do C, you're liable, even if you also agreed to do D, E, F and they can't sue for that? Now, there's a lot of different kinds of audits and there's operational audits. That's some of the stuff they would have us do. There are different degrees of review of internal controls. Our engagement letter said that we just will look only at internal controls sufficient to allow us to determine the fairness of presentation and the financial statements, and otherwise, if we saw something, we'd tell them. Now, that is a much less, much lower standard than it could be on a lot of duties. It's not like one audit is like every other audit. So is it your position that it didn't encompass this concept of the RAC audits and the problems with that? It's our position that it did not. Of course, I think we would, you know, he can allege it however he wants to, but  if they had operational efficiencies, and I assume for the purpose of this that they had somebody out there that may not have actually been doing their job on every occasion, that's not the duty of the financial auditor to find necessarily. We could have, if we had run across it, we should have told them. That was our duty. If somebody fails to do their job, it's not the auditor's fault to make sure that everybody is counting the pills correctly, doing the whatever. It can't do that. Well, auditing is actually one of those areas that is a very specific because the client has to give you the books. If the client has double books and chooses to hide the double books and there's no way to sort that out in the books you've been given, then you can't find that fact. Exactly. That's why you put all these, that's why the lawyers for the auditors are always putting in the hundreds of paragraphs about we're only doing XYZ and we can't do more and we're relying on this and that. Well, we could do more and we would say what we did if they would pay us more. But, I mean, at the end of the day, there's still a limit. Yes, there is. You would never, unless you did a review of every transaction, that would be inefficient, impossible to do, too expensive. So what you do is you look at the things that are likely to create what? An impact on the fairness of presentation of the financial statements, because ultimately that's what auditors promise to do. I will give an opinion that these financial statements state fairly the position in the courts of generally accepted accounting principles. Well, what do you do then with the fact that, I mean, y'all did do something and you were paid. What do we do with that fact? What does that lead us to? It's what the minutes rule, and I don't think this is really a question of the minutes rule. I think it's a question of the duty of professionals and lawyers and accountants, not so much the minutes rule. We know what the minutes rule says. It says this contract is unenforceable. If I had built a bridge and had not been paid, I don't get paid. If the state pays you, great. It's still a contract that was never formed. I've not ever. Do they sue you for unjust enrichment? Beg your pardon? Do they sue you for unjust enrichment? I don't. I've never seen such a case. I've never tried it. It seems to me that would be inconsistent with the kind of principle of Mississippi law that we're not going to bail people out of this by employing any of the typical equitable remedies such as quantum merit and so forth. It's a pretty harsh rule. Here's the problem with this case is you've got two conflicting principles of Mississippi law. One is the formality of the minutes rule, but the other is the notion that you can form these relationships without a contract, at least in the main, generally speaking. Is this the type of clash that should be resolved by the Mississippi Supreme Court in the first instance? These contracts can be formed without a contract. That much I agree. They cannot be formed without mutual assent. And here the minutes rule says the board did not even speak. Well, there was mutual assent perhaps as a factual matter. We're just debating whether it satisfied a formality requirement that exists in the law. Yeah. You're not denying that they wanted your work. Oh, we did the work. They didn't do the paperwork. They didn't comply with the minutes rule. We did the work. You did the work and they wanted you to do the work. So there is mutual assent as a practical matter. Your point, and I take your point, is that it didn't reach the formality required under Mississippi law. That's correct. That's a conflict in two competing principles of Mississippi law. What I'm asking is do you think we're the best people to judge that or should we send this to the State court? Well, we're deciding what should be done with the tort claim against the professional and you also have a couple of other principles. First, fairness. Can you really say we're going to avoid this contract? Can you just answer his question about certifying in Mississippi? I would not because I don't think that it is. We've been at this affair a while. There's no telling how long that would be. But it is also a question that is not really of Mississippi law. It is a matter that deals with whether a — I guess you could certify is there mutual assent sufficient, but I don't think you need to. It seems to me fairly clear. But you don't have a case that says the minutes rule applies to this particular element of accounting malpractice claim. They don't either. Oh, no, no. There's no public body has ever tried to do this again before. I mean, I hope they never do it again. It's the kind of thing where if you can void all the rules and then come back and Yeah, it really is. But let me go back to you were discussing with Judge Ho the issue of they wanted you and they this and they that. And I'm kind of wondering who they is because the guy who signed the letter that was not spread on the minutes, I think he wanted you, okay? But the they being the board, I'm not sure we know what they wanted. The fact that they received reports from somebody that this guy hired doesn't mean that they sat down and said, okay, now we're going to vote. Do we want Horn? Yes or no? I know I've been on nonprofit boards, not city boards, but you sit there and when you receive a report from somebody, you listen to them and then you move on. That's separate from saying, do I want that somebody to do my work? Then I have to think, oh, I'm about to vote. I've got to think about this. Is there evidence that there was such a vote? No. Because then I'm wondering how can there be mutual assent? If the whole idea of the spreading on the minutes is transparency and making sure the board is recording and deciding things, I'm not sure the board ever decided anything about Horn. That's true. Another reason why, if you were going to look at this from the minutes rule standpoint, you would say, do we really want to create a law that says public bodies can rely on it to enforce the assent, but not the contract? Because that will almost ensure they never. But that's separate. And correct me if I'm wrong. Was there ever a vote on Horn? No, there was never. Was there ever anything more than hearing reports from Horn? No, in the letter signed by the CFO. I was trying to get to Judge Ho's point. I think that if you really were looking at the minutes rule side of it, do you want to incentivize a board not to record them because they can always sue on it anyway? I don't think that's consistent with the public policy behind the minutes rule. It's hard enough to get them recorded now. It's easy to say it's the responsibility of the person contracting with the board to get it. But the board's minutes are maybe not ready for 30 days. And you go in and how do you even start work? It's an impractical, harsh rule. But it is a harsh rule. Well, there's also accountability. So let's suppose, and I'm sure you don't like this hypo, but let's suppose Horn got in a lot of trouble with somebody for violating a bunch of rules and this and that. And so the public got all upset with the board saying, why did you hire these people? They're terrible. The board could say, well, I didn't hire them. Ain't nothing that said we did. We, you know, this guy Charles did. But we, I don't know, I'm not seeing nothing in the minutes that says I hired them. I mean, that is part of the whole notion of public officials having accountability is when they vote on something. When Congress votes, there's a record of the vote. When a board votes, a city votes, there's a record of the vote. It might be unanimous consent. You know, we all vote aye. Sometimes it's a raise your hand. But at the end of the day, there's a vote. And they can say, yes, you did consent. But here there's not that. So if mutual assent in Mississippi requires spreading on the minutes, which makes sense to me, then that didn't happen here. I think the argument that your opponent is making is this was a rule meant to protect cities and boards and so on, not a rule to be used as a sword by the people that committed malpractice. How do you answer that? We're certainly not trying to use it as a sword. We would have loved to comply with the contract. They're the ones that decided not to. They're the ones that, in effect, started this and said we're not going to enforce any part of it. We think, or at least the arbitration part. This was not intended to be used as a sword by the bodies. It's supposed to be used as a shield by them, not to take an advantage. We gave you two examples in our briefs. One was a building contractor whose contract said I don't have to check for soil conditions. And one was a water tester that said, well, I'm not going to check for metal. They didn't even respond to the soil one. The water one, they changed the facts and said, well, maybe he certified that the water was safe to drink, which is not something in the example. They have no answer to the unfairness that is created if a public body can sue in negligence on this, claiming that, gee, there was enough assent, but we're not going to follow the contract that said what you're supposed to do. There is no answer in their brief. I suspect there is none that can be provided. Okay. Anything else? No. Okay. Thank you. We have your argument. Thank you. I think it's important to reemphasize there was no decision not to, as was just suggested. Indeed, in the Swinging River decision, number one, the Supreme Court pointed out that if the administrative rule is not complied with, there's no contract enforced, and that's the end of the debate. Indeed, Singing River had offered to stipulate that there was a contract, and the Supreme Court said that cannot stipulate to that which violates Mississippi law. There was no strategic voice. Could there not be a ratification, though? I thought that a board could ratify a prior. So let's say there were – I know we have this whole issue of going into receivership or trust or whatever, but let's just say we had an ongoing board and, you know, two years ago this auditor was hired and so on and so forth, pursuant to this letter that was never spread on the minutes. Can they then have a meeting and spread it on the minutes and ratify the past or not? I thought they could. The Supreme Court has said you can ratify. Okay. When and how. Okay. So they could have, for example, at the period when we were arguing about the arbitration, they could have ratified that, the letters, and then the arbitration clause would have been enforceable as would have everything else. And then we answered that. I don't want to hear about this no strategic choice you were going to tell me about. So you can go ahead and answer, but I do want to get that in before you run out of time. Yes. I believe that ratification is permissible. It is certainly not workable in this case with our receiver. And, indeed, since the contract does not exist, there could be no strategic choice whether to enforce the contract or not. That's why, in my view, I'm relegated to my tort claim. When was it determined that the contract did not exist? When the district court so ruled, we raised in response to the arbitration that consists with Singing River, as a matter of law, this contract did not exist out of an issue. But you didn't assert that the contract didn't exist. The district court's sui sponte. No, no. No, no. I don't want to mislead the court in any way. Yes, we noted for the court that consisted with Mississippi law. So you made a choice. We did make a choice to assert the contract did not exist. I do not dispute that, certainly not. Okay. Let me close, if I may, with the question you posed earlier, which is there's nothing here that requires that the Mississippi court weigh in. Recognize that what's basically being asked at the end of the day is that the penalty for a public body not spreading it on the minutes, a task that's actually the contracting party's obligation, is to lose the rights of the public body. That's what's being asked today. That any claim arising out of their defective work, and this would be true presumably where we're talking a malpractice claim or a claim involving defective equipment that was purchased pursuant to a contract that was not spread across. That is the... They could ratify that contract and then sue. I mean, they have the power in their hands. But once decided, they've got to live with that. So they could have ratified this, and a public body in general could ratify this contract for the defective equipment or whatever, and your hypo or the auditor, and then they would live with the deal that they made. But if they don't want to live with that deal, then they can't take the benefits of the deal and not get the detriments, which is the limitation on the auditor, the limitation on the equipment or whatever. Well, if that's the panel's conclusion, since that is an unprecedented expansion of the impact of the public records minutes rule, I would suggest that isn't itself the dispositive reason this case needs to be certified to the Mississippi Supreme Court. Let's just hypothesize that there's ratification. I'm sorry, you had a question. No, please. I mean, all this talk about certification, in Mississippi about right after you learn you have the right to remain silent, you learn a board speaks through its minutes. If there's one rule of law I've heard in Mississippi for 30 years, it's a board speaks through its minutes. So I just don't know what else the Supreme Court would need to say on a board speaks through its minutes. So tell me what the question would be to the Mississippi Supreme Court. What question would be certified? The failure to put on the minutes means that there could be no claim against the other part, the very issue in Singing River at the same time. But that's not what we're saying here. I think if the truck ran into the hospital or whatever, then, yeah, of course you can sue on that. The question is whether you can assent to a relationship outside of the minutes. And why is that something we need to ask the Mississippi Supreme Court when the board speaks through its minutes? Well, because in the only case we have where the board was a plaintiff, this actually preceded wellness, Mississippi Supreme Court plainly remanded for further proceedings as a plaintiff, having concluded that minutes rule had not been complied with, and hence arbitration. But no one raised this point. Okay. Quick question. If the board were to ratify the contract tomorrow, I assume the result would be there is a relationship, you can pursue your claim, and you do it in arbitration. That would be my assumption. Here, of course, the board no longer exists and is not for a number of years. Okay. Thank you so very much. Thank you very much. We have you all's argument.